[Cite as *Riveredge Dentistry Partnership v. Cleveland*, 2026-Ohio-2713.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

RIVEREDGE DENTISTRY
PARTNERSHIP,                          :

                                      :

      Plaintiff-Appellee,

                                      :           No. 115385

      v.

                                      :

CITY OF CLEVELAND,

                                      :

      Defendant-Appellant.

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 16, 2026

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-20-932884

---

### *Appearances:*

The Dolan Law Firm, LLC, and Michael A. Dolan, *for appellees*.

Mark D. Griffin, Cleveland Director of Law, James R. Russell, Jr., Chief Assistant Director of Law, and Carli R. Young, Assistant Director of Law, *for appellant*.

MICHAEL JOHN RYAN, J.:

{¶ 1} Defendant-appellant the City of Cleveland ("appellant") appeals the trial court's decision to deny its partial motion for summary judgment and grant

summary judgment in favor of plaintiffs-appellees, Riveredge Dentistry Limited Partnership and Riveredge Dentistry, Inc. (collectively "Riveredge"); West Valley Condominium Association ("WVCA"); the Darshana A. Shah Trust ("Shah Trust"); Dr. Benedict Kim ("Dr. Kim"); and Kamm Property, LLC ("Kamm Property") (collectively referred to as "appellees"), which granted a writ of mandamus in their favor. For the reasons that follow, we affirm.

## I. Background

{¶ 2} This case concerns repeated flooding and water damage to the basement of a commercial building located at 3865 Rocky River Drive in the West Park neighborhood of Cleveland, Ohio. West Park sits on the western border of Cleveland and contains the popular Kamm's Corners retail and entertainment district.

{¶ 3} In 1925, appellant initiated construction of a storm sewer culvert in West Park, known as the "Albers sewer." The Albers sewer is a 60-inch brick storm sewer that sits between the boundary of Kamm's municipal parking lot ("parking lot") and the appellees' property and crosses through the northeast boundary of the property. The Albers sewer empties, discharges, and drains into the Northeast Ohio Regional Sewer District ("NEORSD") combined sewer system, which is located on Rocky River Drive. Between 1925 and May 2019, stormwater from the parking lot was discharged directly into the Albers sewer. A curb constructed along the property's western property line separated the building from the parking lot and

diverted the parking lot's stormwater away from the building and into catch basins connected to the Albers sewer.

{¶ 4} In 1996, appellant acquired the parking lot. By 2015, the parking lot had fallen into disrepair, but nothing was done at that time. In 2018, appellant worked with NEORSD to apply for a grant for improvements to the parking lot. In May 2019, appellant contracted with Cook Paving & Construction Company ("Cook Paving") to complete construction of five new bio-retention basins to divert stormwater away from the Albers sewer.

{¶ 5} Prior to the 2019 construction, when the parking lot's catch basins clogged with silt and debris, stormwater flowed along a curb at the western end of the lot, discharging onto the properties of popular bars and restaurants located immediately north of the subject building. The new basins were constructed to accept diverted parking lot stormwater and discharge it into the ground. Two of the basins (Basins 4 and 5) are interconnected and located on the property line of the parking lot and the appellees' building. The basins extend along the entire length of the building and are located within ten feet of the foundation of the building. Basins 4 and 5 replaced the curb that had previously separated the parking lot from the appellees' property. The curb separating the parking lot from the Basins 4 and 5 was cut out in front of each basin, so that the curb no longer divided the parking lot from the basins.

{¶ 6} Appellees have varying property interests in the subject building. The building consists of two stories and a basement; there are six office units, including

two in the basement. The building was occupied with commercial tenants including Riveredge, which had an office on the second floor and two offices in the basement. Riveredge occupied the basement of the building from 1990 until 2019. During that time, stormwater backed up in the building at least twice, including a 2011 sump pump failure and a 2016 backup caused by a blockage in the Albers sewer.

{¶ 7} Since late May 2019, the basement of the subject building has experienced repeated intermittent flooding. According to appellees, stormwater flooded the building over 80 times between late May 2019 and mid-October 2024. Appellees alleged that the flooding caused them to incur lost rents and damage to paint, paper, carpet, drywall, as well as the accumulation of mold in the basement units.

{¶ 8} In June 2019, appellees notified appellant of the flooding, which they attributed to the stormwater run-off from the parking lot into Basins 4 and 5, located next to appellees' property. In response, appellant had Cook Paving construct curbs in the parking lot attempting to direct some of the stormwater into the other three retention basins.

{¶ 9} In May 2020, Riveredge filed suit against appellant and Cook Paving alleging appellant intentionally diverted the parking lot's stormwater away from the Albers sewer and into the five bio-retention basins, causing flooding to the building's basement. The complaint alleged that appellant and Cook Paving "jointly, severally, intentionally, recklessly, and/or negligently" caused, diverted, or allowed ground and surface water from appellant's parking lot to be discharged onto appellees'

property.[1]  Riveredge alleged that the repeated floodings have caused further damage making the condominium units unusable and unsaleable and has resulted in the loss of all fair market value to their property.

{¶ 10} Riveredge filed a first and second amended complaint, adding the NEORSD as a defendant.  In the second amended complaint, Riveredge alleged that appellant and NEORSD recklessly and/or negligently diverted stormwater from the sewer system and onto Riveredge's property, causing the building to flood.

{¶ 11} NEORSD moved to dismiss pursuant to Civ.R. 12(B)(6), alleging immunity.  The court granted the motion.  Riveredge appealed and this court affirmed the trial court.  *See Riveredge Dentistry Partnership v. Cleveland*, 2021-Ohio-3817 (8th Dist.).  The case was remanded to the trial court.  Riveredge filed a third amended complaint and added a takings claim pursuant to the United States and Ohio Constitutions.

{¶ 12} In June 2022, appellant filed a notice of removal to federal district court.  Riveredge subsequently filed a fourth amended complaint in federal court, adding the remaining appellees as plaintiffs.  The claims against NEORSD were eventually dismissed.  The parties filed cross motions for summary judgment.  The court dismissed the federal takings claim as to WVCA, the Shah Trust, Dr. Kim, and Kamm Property, finding that their claims were barred by the applicable two-year statute of limitations.  *Riveredge Dentistry Partnership v. Cleveland*, 2024 U.S.

---

[1] In April 2022, Riveredge filed a voluntary dismissal of all claims against Cook Paving.

Dist. LEXIS 26292, *56 (N.D. Ohio Feb. 15, 2024). As to Riveredge, the court determined that there were genuine issues of material fact concerning the character of the land and whether the flooding was intended or foreseeable and denied summary judgment in favor of either party on its federal takings claim. *Id.* at *60, *69. The court remanded the state takings claim and stayed the remainder of the case pending adjudication in state court. *Id.* at *88.

{¶ 13} In state court, appellees filed a verified petition for a writ of mandamus. The parties also filed cross motions for summary judgment, and a hearing was held on the motions. Appellees claimed that the recurring flooding resulted from appellant's stormwater diversion and constituted a taking of private property in violation of the Ohio Const., art. I, § 19, entitling them to a writ of mandamus compelling the initiation of appropriation proceedings under R.C. Ch. 163. Appellant's motion requested summary judgment against all appellees except Riveredge, asserting that the parties could not demonstrate a lack of an adequate remedy at law, WVCA lacked standing, and their claims were barred by the statute of limitations.

{¶ 14} The trial court denied appellant's motion for summary judgment and granted the appellees' motion for summary judgment, determining that appellees were entitled to a writ of mandamus.

{¶ 15} This appeal followed.

## II. Assignments of Error

I. The trial court erred as a matter of law by granting summary judgment to all Relators and issuing a writ of mandamus to compel appropriation proceedings.

II. The trial court erred as a matter of law by denying the City's motion for partial summary judgment because there are Relators that lack standing, cannot meet their burden, and the applicable statute of limitation bars their claims for a writ of mandamus.

## III. Law and Analysis

{¶ 16} In the first assignment of error, appellant argues that the trial court erred in granting summary judgment in favor of appellees and issuing a writ of mandamus to compel appropriation proceedings.

{¶ 17} Summary judgment is a burden-shifting exercise. Initially, the moving party must point to evidentiary materials to show there are no genuine issues of material fact and it is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996). If the moving party meets this burden, a reciprocal burden is placed on the nonmoving party. *Id.* at 293. The nonmovant may not rest upon the mere allegations or denials of pleadings, but its response, by affidavit or as otherwise provided in the rule, must set forth specific facts showing that there is a genuine issue for trial. *Id.*, citing Civ.R. 56(E).

{¶ 18} The Ohio Const., art. I, § 19, guarantees that private property shall not be taken for public use without just compensation. *Boggs v. Cleveland*, 2025-Ohio-5094, ¶ 23-30. When private property is involuntarily taken by government action, "[m]andamus is the appropriate action to compel public authorities to institute appropriation proceedings." *Boggs* at ¶ 29, 30. The trial court "acts as the trier of

fact and law and determines whether private property ha[s] been taken by the public authority." *Id.* If the court determines a taking has occurred, a writ of mandamus issues compelling the public authority to commence an appropriation proceeding in probate court. *Id.*

{¶ 19} In order to be entitled to a writ of mandamus, appellees must establish a clear right to compel the government actor to commence the appropriation action, a corresponding clear legal duty of the government actor to institute that action, and a lack of an adequate remedy at law. *State ex rel. Doner v. Zody*, 2011-Ohio-6117, ¶ 53. "[T]he appropriate standard of proof in mandamus cases is proof by clear and convincing evidence." *Doner* at ¶ 55.

{¶ 20} Any direct encroachment upon land, which subjects it to a public use that excludes or restricts the dominion and control of the owner over it, is a taking for which a right of compensation is guaranteed under the Ohio Const., art. I, § 19. *Id.* at ¶ 59, citing *Norwood v. Sheen*, 126 Ohio St. 482 (1933), paragraph one of the syllabus.

{¶ 21} Inverse condemnation "is 'a cause of action against the government to recover the value of property taken by the government without formal exercise of the power of eminent domain.'" *Doner* at ¶ 62, quoting *Moden v. United States*, 404 F.3d 1335, 1342 (2005). "'Not every "invasion" of private property resulting from government activity amounts to an appropriation.'" *Doner* at ¶ 64, quoting *Columbia Basin Orchard v. United States*, 132 Ct. Cl. 445, 449 (1955). Appellees must show that the government intended to invade a protected property interest or

that the government invasion is or was the direct, natural, or probable result of the government conduct (the causation prong). *Id.* at ¶ 64. The nature and magnitude of the government action must also be considered (the appropriation prong). *Id.*

> Even where the effects of the government action are predictable, to constitute a taking, an invasion must appropriate a benefit to the government at the expense of the property owner or at least preempt the owner's right to enjoy his [or her] property for an extended period of time, rather than merely inflict an injury that reduces its value.

(Cleaned up.) *Id.*

{¶ 22} In cases "involving claims of government-induced flooding," a taking may be established

> when the evidence shows that (1) the flooding is either intended by the government or that the flooding is the direct, natural, or probable result of government-authorized activity and (2) the flooding is either a permanent invasion or creates a permanent liability because of intermittent, but inevitably recurring overflows.

*Id.* at ¶ 65.

{¶ 23} To satisfy the causation prong, appellees

> need not allege or prove that defendant specifically intended to take property. There need be only a governmental act, the natural and probable consequences of which effect such an enduring invasion of [r]elators' property so as to satisfy all other elements of a compensable taking. In essence, relators must prove both that respondents' actions caused the flooding and that the flooding was a foreseeable result of their actions.

*Id.* at ¶ 67.

{¶ 24} Thus, as it applies to this case, the first prong of the *Doner* test requires that appellant either intended the flooding or that the flooding was the direct, natural, or probable result of appellant's activity. Appellees claim both — that

appellant intended to cause the flooding through its actions or inaction in addressing the flooding and the flooding was the direct, natural, or probable result of appellant's construction of the basins.

{¶ 25} The *Doner* Court specifically addressed situations involving flooding caused by the construction of storm sewers:

> In cases of flooding caused by actions of the government . . . "the construction and operation of a municipal storm sewer system so as to cause material damage to a down-stream landowner, as a result of flooding from rains or other causes which are reasonably foreseeable, is a direct encroachment upon that land which subjects it to public use that excludes or restricts the landowner's dominion and control over his [or her] land and such owner has a right to compensation for the property . . . ."

*Doner* at ¶ 60, quoting *Masley v. Lorain*, 48 Ohio St.2d 334 (1976), syllabus.

{¶ 26} *Doner* requires the trial court to determine if the flooding is a permanent invasion or creates a permanent liability because of intermittent, but inevitably recurring, overflows. *Id.* at ¶ 65. In considering the appropriation prong — the nature and magnitude of the government action — we note that it is undisputed that the flooding was intermittent and inevitably recurring. The flooding rendered the building's basement unusable, and the foundation of the building suffered structural damage. Appellees submitted an estimate to cure the structural and other damage caused by the flooding in the amount of $458,629 and an estimate for mold abatement in the amount of $71,292.93. The building was valued at $850,000 prior to the installation of the basins. An updated valuation showed the building was currently valued at $240,000. This demonstrates a decrease in the fair market value.

{¶ 27} On appeal, appellant argues that the trial court erred in applying the two-prong *Doner* test.  Appellant argues that the trial court was required to apply the multi-factor test set forth in *Ark. Game & Fish Comm. v. United States*, 568 U.S. 23 (2012).  In *Ark. Game*, the U.S. Army Corps of Engineers periodically authorized flooding of forest land owned and managed by the commission over a period of seven years, resulting in a loss of a substantial amount of timber.  The commission brought an action alleging a taking under the Fifth Amendment of the United States Constitution.  *Id.* at 26.  The Court stated the question presented was "whether a taking may occur, within the meaning of the Takings Clause, when government-induced flood invasions, although repetitive, are temporary."  *Id.*  The Court concluded "recurrent floodings, even if of finite duration, are not categorically exempt from Takings Clause liability."  *Id.* at 27.  The Court pointed to a number of factors to consider, including the time or duration of the alleged taking, "the degree to which the invasion is intended or is the foreseeable result of authorized government action[,]" the character of the land, the owner's reasonable investment-backed expectations for the use of the land, and the severity of the interference with that use.  *Id.* at 38-39.

{¶ 28} Appellant argues that the trial court failed to consider the *Ark. Game* factors.  According to appellant, if the trial court had applied the proper test, the court would have found that "there is at least [an] issue of fact for the factors required to find a compensable taking by flooding."  (Respondent's brief on appeal, p. 15.)

{¶ 29} *Ark. Game* is inapplicable. Unlike the periodic and temporary flooding in *Ark. Game*, the flooding that occurred here was intermittent, but recurring. And although the district court determined that *Ark. Game* was applicable, that finding was in relation to a federal takings claim brought pursuant to 42 U.S.C. 1983. Our concern here is appellees' state takings claim.

{¶ 30} Appellees direct this court to several instructive cases, and we take note of a long line of Ohio Supreme Court cases that hold that a taking may result where sewage or stormwater from a governmental authority causes damage to a property owner. In *Doner*, 2011-Ohio-6117, the construction of a new spillway to facilitate the discharge of lake waters intermittently overflowed onto privately owned property. The Ohio Supreme Court cited *United States v. Cress*, 243 U.S. 316 (1917), where the Court determined that "[t]here is no difference of kind, but only of degree, between a permanent condition of continual overflow by backwater and a permanent liability to intermittent but inevitably recurring overflows; and, on principle, the right to compensation must arise in the one case as in the other." *Id.* at ¶ 60, citing *Cress* at 328. *See also Gilbert v. Cincinnati*, 125 Ohio St.3d 385 (2010) (city-owned pump station that discharged sanitary sewage into a creek running through private property on "79 days between 1998 and 2008" was held to be a physical taking that violated the downstream property owners' constitutional rights); *Masley*, 48 Ohio St.2d 334, at the syllabus ("The construction and operation of a municipal storm sewer system so as to cause material damage to a downstream landowner, as a result of flooding from rains or other causes which are reasonably

foreseeable, is a direct encroachment upon that land which subjects it to a public use that excludes or restricts the landowner's dominion and control over his [or her] land, and such owner has a right to compensation for the property taken under Section 19, Article I of the Ohio Constitution."); *Lucas v. Carney*, 167 Ohio St. 416 (1958), syllabus (construction of public improvement on county-owned land that caused stormwaters to flood landowner's property and deprived owners of use and enjoyment of property constituted a taking "for which [the] county is liable, and the owner of such property is entitled to institute an action and have a jury empaneled to determine the compensation due [the landowner] from the county for the appropriation pro tanto of [the landowner's] property"); *Norwood*, 126 Ohio St. 482 (1933) (a petition that set forth that a sewer constructed by private parties, but subsequently controlled and maintained by city, that caused flooding and pollution on land, stated a cause of action for temporary appropriation of private property to a public use); *Mansfield v. Balliett*, 65 Ohio St. 451 (1902), paragraph three of the syllabus ("Where a municipal corporation, without a legal appropriation in which the riparian owner is afforded an opportunity to obtain compensation, causes its sewage to be emptied into a natural watercourse, thereby creating a nuisance inflicting special and substantial damages on such proprietor, it is liable to an action for the damages so sustained.").

{¶ 31} Appellees showed, by clear and convincing evidence, that the flooding was the direct, natural, or probable result of appellant's construction of the bio-retention basins.  Appellant counters that they offered evidence that the building

had a history of flooding. But the evidence shows that there were only two historical occurrences of flooding, once in 2011 that was the result of a failed sump pump and again in 2016, which was caused by a backup of the Albers sewer. Since the construction of the basins in 2019, there have been more than 80 flooding events.[2] Appellees performed dye tests, which showed that the stormwater from Basins 4 and 5 flowed into the basement of building. Appellant did no testing of its own or offer evidence to counter the conclusions of the appellees' tests.

{¶ 32} In 2021, appellees retained a structural engineer to inspect the basement after a basement exit door became inoperable. The engineer, Christopher Jasinski, reported that the repeated flooding of property and building with stormwater caused mold, damage to the interior basement walls, and cracks in the exterior basement foundation walls and basement floor. Jasinski concluded that the basins were the cause of the frequent flooding of the basement level of the building.

{¶ 33} Michael McAndrews ("McAndrews"), a landscape architect employed by appellant, was responsible for the design, drafting, and implementation of the basins. He also supervised the construction. According to McAndrews, he intentionally designed the basins to maximize stormwater discharge into the basins and intentionally placed Basins 4 and 5 within ten feet of the building. R.E. Warner & Associates ("R.E. Warner"), an engineering firm, contracted with appellant for general engineering and architectural services. Jennifer Kalin, director of business

---

[2] At the time of the hearing on the motions for summary judgment, there had been more than 90 flooding events.

development at R.E. Warner, stated that although the company's proposal to appellant included 26 hours of engineering services on the project, the only services provided were pre- and post-construction drainage calculations, i.e., identifying the volume of stormwater runoff prior to and after the improvements were made, and surveying services. R.E. Warner did not provide any design or post-construction services.

{¶ 34} Appellant does not contest that the new basins discharge stormwater from the parking lot into the ground within ten feet of the building and that it constructed the basins knowing that the basement of the building was downstream and lower than the basins. Appellant also offered no evidence to counter the evidence appellees provided that the new storm basins caused the flooding to appellees' building.

{¶ 35} Given the construction of the basins, which did not include barriers to prevent water from infiltrating the ground, the high volume of stormwater flowing from the parking lot, the downhill direction of the water flow, and the close proximity of the basins to the building, the flooding of appellees' property was a foreseeable result of appellant's actions.

{¶ 36} Based on the evidence before this court, appellees have shown by clear and convincing evidence that appellant's action in constructing the basins constituted a compensable taking.

{¶ 37} The first assignment of error is overruled.

{¶ 38} In the second assignment of error, appellant argues that the trial court erred in denying their motion for partial summary judgment because the claims are barred by the statute of limitations as to all appellees (except for Riveredge), certain appellees lack standing, and appellees cannot meet their summary-judgment burden. We consider each argument in turn.

{¶ 39} Appellant contends that appellees, save Riveredge, filed their claims outside the two-year statute of limitation that applied to this case — R.C. 2744.04(A). Appellees counter that the appropriate statute of limitations is four years, pursuant to R.C. 2305.09(E). In *Doner*, 2011-Ohio-6117, the Ohio Supreme Court held that the four-year statute of limitations found in R.C. 2305.09(E) is applicable to a takings claim. "'Under R.C. 2305.09(E), an action for relief on the grounds of a physical or regulatory taking of real property must generally be brought within four years after the cause accrued.'" *Id.* at ¶ 34, quoting *State ex rel. Nickoli v. Erie MetroParks*, 2010-Ohio-606, ¶ 29. "[T]he four-year statute of limitations in R.C. 2305.09(E), which was expressly promulgated by the General Assembly to address takings claims, is generally applicable to such claims." *Doner* at ¶ 35. Appellant has not convinced us otherwise.

{¶ 40} The construction of the retention basins was substantially completed in May 2019. Appellant was notified about the flooding in June 2019. Appellees brought their takings claims on May 10, 2022. Assuming that the statute of limitations began to run in June 2019 when flooding first started, appellees timely asserted their claims.

{¶ 41} Even if we determined that R.C. 2744.04(A) controlled, the *Doner* Court found that ongoing control by a government entity can toll the running of the limitations period. "'[T]he defendant's ongoing conduct or retention of control is the key' to distinguishing a continuing trespass, which tolls a statute of limitations, from a permanent trespass, which does not." *Id.* at ¶ 44, quoting *Sexton v. Mason*, 2008-Ohio-858, ¶ 45. "'[A] continuing trespass in this context occurs when there is some continuing or ongoing allegedly tortious activity attributable to the defendant. A permanent trespass occurs when the defendant's allegedly tortious act has been fully accomplished.'" *Doner* at *id.*, quoting *Sexton* at *id.* Even if we were to assume appellant's position that the two-year statute of limitations in R.C. 2744.04(A) applied to appellees' claims, "[w]hen an act carried out on the actor's own land causes continuing damage to another's property and the actor's conduct or retention of control is of a continuing nature, the statute of limitations is tolled." *Doner* at paragraph two of the syllabus. Thus, under the facts of this case, their claims would be tolled.

{¶ 42} Accordingly, the appellees' claim was timely filed.

{¶ 43} Next, appellant claims that WVCA does not have standing to seek a writ of mandamus because the association does not own the subject property. We disagree.

{¶ 44} In *Riveredge*, 2024 U.S. Dist. LEXIS 26292, the district court found that WVCA had standing to bring a state takings claim:

[T]he court finds the [WVCA] has standing to assert a takings/inverse condemnation claim. Under [R.C. 5311.20], a condominium owner's association has authority to sue as a separate legal entity in any action relating to the "common elements." [R.C. 5311.20]. In relevant part, "common elements" are defined as "[a]ll other areas, facilities, places, and structures that are not part of a unit," which includes: "(a) Foundations, columns, girders, beams, supports, supporting walls, roofs, halls, corridors, lobbies, stairs, stairways, fire escapes, entrances, and exits of buildings; [and] (b) Basements, yards, gardens, parking areas, garages, and storage spaces; . . ." [R.C. 5311.01(F)]. "Further, 'pursuant to R.C. 5311.20, the unit owners association, on behalf of all unit owners and for each of them, is the proper party to bring an action for damages pertaining to the common areas sustained by any or all of the unit owners.'"

(Cleaned up.) *Id.* at *32 – 33.

{¶ 45} The court concluded that because WVCA's claim includes allegations "concerning the common elements of the building, with flooding alleged to have caused damages to common areas of the Building's basement, foundation, and structural elements," WVCA had standing to assert a state-law takings claim. *Id.* at *33. We agree with the reasoning of the district court and find that WVCA has standing to assert a takings claim.

{¶ 46} Moreover, as noted by the trial court, both R.C. 5311.081(B)(2) and 5311.20 grant a condominium association standing to commence a civil action on any matter affecting the condominium property.[3]

{¶ 47} Finally, appellant argues appellees, except for Riveredge, have an adequate remedy at law.

---

[3] R.C. 5311.081(B)(2) provides, in part, that a condominium association may exercise all powers of the association, including the power to commence any civil action that is in the name of the association and relates to matters affecting the condominium property.

**{¶ 48}** "Mandamus will not issue if there is a plain and adequate remedy in the ordinary course of law." *State ex rel. Mackey v. Blackwell*, 2005-Ohio-4789, ¶ 21. Appellant relies on *Mackey*, in which the Court found that mandamus was inappropriate because appellees had an adequate remedy at law — the availability of a 42 U.S.C. 1983 federal civil rights claim. Appellant's reliance on *Mackey* is misplaced; *Mackey* did not involve a state constitutional takings claim and nothing in that decision holds that a federal civil rights action provides an adequate remedy at law for a takings claim brought pursuant to state law.

**{¶ 49}** In *Doner*, 2011-Ohio-6117, appellees raised both federal and state takings claims in their writ of mandamus. As the trial court in this case noted, the *Doner* Court did not dismiss the state takings claim despite the pending federal takings claim. Because appellees' state tort claims are barred by R.C. Ch. 2744 immunity, appellees are without an adequate remedy at law and are therefore entitled to seek a writ of mandamus based upon a state takings claim.

**{¶ 50}** Accordingly, the trial court's judgment is affirmed. Case is remanded for the court to issue a writ of mandamus to compel the initiation of appropriation proceedings.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHAEL JOHN RYAN, JUDGE

EILEEN T. GALLAGHER, P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR